UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

CHRISTOPHER SMOLINKSI,

               Plaintiff,                        Case No. 1:23-cv-10998

v.                                        Honorable Thomas L. Ludington
                                        United States District Judge

ADVANCED CORRECTIONAL
HEALTHCARE, INC., et al.,

               Defendants.

_____/

**OPINION AND ORDER DENYING DEFENDANTS ADVANCED CORRECTIONAL
HEALTHCARE, MISCHLONEY, AND PIOSZAK'S MOTION TO DISMISS**

In 2020, Plaintiff Christopher Smolinski was confined at the Alpena County Jail.
According to the Complaint, upon intake, Smolinski disclosed an infected sore on his right ankle.
When the wound worsened and began bleeding, swelling, splitting, burning, and rendering
Plaintiff's entire right foot numb, Plaintiff was only given a band-aid, despite a specialist's
prescriptions involving special bandages and dressings. When the wound worsened and the
infection was suspected to be in Plaintiff's bones, Plaintiff was denied the opportunity to see an
outside specialist. As a result, shortly after Plaintiff was released from Alpena County Jail, his
right foot was amputated.

In 2023, Plaintiff sued Defendants Alpena County Jail, Advanced Correctional Healthcare,
Inc., Debra Mischloney, and Dorothy Pioszak alleging that Defendants violated Plaintiff's
Fourteenth and Eighth Amendment Rights through their deliberate indifference to Plaintiff's
medical needs, ECF No. 1. On June 27, 2023, Defendants Advanced Correctional Healthcare,
Mischloney, and Pioszak filed a joint Motion to Dismiss for failure to state a claim under Civil

Rule 12(b)(6). ECF No. 6. For reasons stated below, the Motion will be denied.

## I.

In May 2020, Plaintiff Christopher Smolinski was confined in Alpena County Jail, which contracts Advanced Correctional Healthcare (ACH) to provide healthcare services to its inmates. ECF No. 1 at PageID.3–4. During Plaintiff's "intake screening," he noted a history of infectious diseases and a right ankle wound which caused him "severe pain." *Id.* at PageID.5. He also noted he had an infected "sore on his right foot that was draining fluid." *Id.*

On June 16, 2020, Plaintiff told an ACH employee that he "needed to be seen 'ASAP'" for his right ankle and requested "medication for his pain and more bandages." *Id.* The next day, Defendant Debra Mischloney, a registered nurse employed by ACH, ECF No. 6 at PageID.36, examined Plaintiff and noted that his right ankle wound "had yellow-ish discharge," was causing him pain, and "would swell and split open." ECF No. 1 at PageID.5. Mischloney determined Plaintiff's wound was a "right ankle lateral ulcer" and advised him to eat a high-protein diet, alternate between taking ibuprofen and Tylenol, and use diclofenac gel daily. *Id.* Plaintiff's Complaint emphasized that diclofenac gel is "a topical solution used to treat pain and swelling" and "is not commonly used to treat infections." *See id.* at PageID.5 n.1.

Five days later, Plaintiff informed ACH nurses that his wound had worsened to the point that his right foot was "swollen, bruised, and numb." *Id.* Plaintiff further complained of headaches and sleepiness, noting that "he thought something was 'really wrong'" and that he was scared. *Id.* at PageID.5–6. In response, Mischloney examined Plaintiff again the next day. *Id.* During this examination, Mischloney observed clear fluid leaking from Plaintiff's wound and noted it needed cleaning, which was confirmed by Defendant Pioszak, a nurse practitioner employed by ACH. *Id.* Mischloney scheduled an appointment for Plaintiff to be examined by wound specialists at the

University of Michigan MidMichigan Wound Clinic (Wound Clinic). *Id.*

On June 26, 2020, Dr. Straley examined Plaintiff at the Wound Clinic and advised him to change his wound dressing "every three days with foam." *Id.* These instructions were reiterated to Plaintiff at a second Wound Clinic appointment on July 2, 2020. *Id.* On July 9, 2020, Plaintiff arrived at the Wound Clinic for his third appointment with periwound maceration[1] and nothing but a band-aid on his wound because, "appropriate dressings were not available to him while in Alpena County Jail." *Id.*

In August 2020, Plaintiff "was referred to a[nother] specialist for continued care" because "osteomyelitis[2] was suspected." *Id.* at PageID.6–7. But this referral "was denied while [Plaintiff] was incarcerated." *Id.* at PageID.7. Notably, Plaintiff's Complaint does not identify who first "suspected" osteomyelitis, who referred Plaintiff to the specialist, or who denied the referral. *See id.* at PageID.6–7.

After his release from Alpena County Jail, Plaintiff underwent "several surgeries to his ankle . . . because of the delay and subsequent refusal of treatment" while incarcerated, including

---

[1] Periwound maceration is defined as "the softening and breakdown of the skin [surrounding the wound] as a result of prolonged exposure to moisture." *Quick Guide: Periwound Maceration*, WOUNDS UK (Nov. 3, 2022), https://wounds-uk.com/quick-guides/quick-guide-periwound-maceration/#:~:text=Maceration%20is%20described%20as%20%E2%80%9Cthe,increasing%20their%20susceptibility%20to%20trauma [https://perma.cc/DP5D-AFLV]. Macerated skin is white, soggy, and contributes to increased wound size and length of treatment. *See Periwound Management: What Clinicians Should Know*, WOUND PROS (Jan. 31, 2023), https://www.thewoundpros.com/post/periwound-management-what-clinicians-should-know#:~:text=The%20macerated%20periwound%20skin%20is,increased%20risk%20of%20contact%20dermatitis [https://perma.cc/Y2XC-KZGK].
[2] Osteomyelitis is defined as a "serious infection of the bone" *Osteomyelitis*, NAT'L LIBRARY MED., (last updated May 31, 2023), https://www.ncbi.nlm.nih.gov/books/NBK532250/#:~:text=Osteomyelitis%20is%20a%20serious%20infection,bloodstream%2C%20fractures%2C%20or%20surgery [https://perma.cc/3P5P-ADHJ]. Symptoms of osteomyelitis include erythema, swelling, fever, and chills. *Id.* Complications include septic arthritis, abscess, bone deformity, and systemic infection. *Id.*

amputation. *See id.* at PageID.7

On April 28, 2023, Plaintiff sued Alpena County Jail, ACH, and Mischloney and Pioszak in their individual capacities. The Complaint alleges four violations of 42 U.S.C. § 1983: deprivation of Plaintiff's Fourteenth Amendment Rights by Defendants Mischloney and Pioszak, *id.* at PageID.7 (Count I); deprivation of Plaintiff's Eighth Amendment rights by Defendants Mischloney and Pioszak, *id.* at PageID.10 (Count II),[3] deprivation of both rights by Defendant ACH, under a *Monell* theory of § 1983 liability, *id.* at PageID.12 (Count III); and deprivation of both rights by Defendant Alpena County Jail, under a *Monell* theory of § 1983 liability. *Id.* at PageID.14. (Count IV)

In Count I, Plaintiff alleges that Mischloney and Pioszak were deliberately indifferent to his serious medical needs, thus violating his Fourteenth Amendment rights. *See id.* at PageID.7–10. In Count II, Plaintiff alleges Mischloney and Pioszak caused him "great physical pain, emotional distress, humiliation, degradation, and suffering[]" in violation of his Eighth Amendment right to be free from cruel and unusual punishment. *See id.* at PageID.10–12.

In Counts III and IV, Plaintiff alleges *Monell* claims against Defendants ACH and Alpena County Jail. *See generally* ECF No. 1 at PageID.12–16. Specifically, Plaintiff alleges a "custom, policy, and/or practice" of (1) "ignoring substantial risks of serious harm to inmates" by "deliberately choosing less efficacious treatment," *id.* at PageID.13, 15, and (2) "failing to refer inmates for necessary off-site medical treatment," *id.* at PageID.14, 16. Plaintiff also alleges a "fail[ure] to properly train and supervise . . . employees or contractors to monitor and address inmate[s]' serious medical conditions and provide proper diagnosis and treatment." *Id.* at PageID.14, 16.

---

[3] Erroneously labeled "Count I" in Plaintiff's Complaint.

On June 27, 2023, Defendants ACH, Mischloney, and Pioszak (collectively, the "ACH Defendants") filed a Motion to Dismiss under Civil Rule 12(b)(6), arguing Plaintiff failed to state a claim upon which relief could be granted. ECF No. 6.

## II.

Under Civil Rule 12(b)(6), a pleading fails to state a claim if it does not contain allegations that support recovery under any recognizable theory. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). When considering a Rule 12(b)(6) dismissal, the court accepts all factual allegations of the complaint as true and will construe the pleading in favor of the nonmovant. *See Lambert v. Hartman*, 517 F.3d 433, 439 (6th Cir. 2008). The plaintiff need not provide "detailed factual allegations" to survive dismissal, but the "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In essence, the plaintiff's complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," but the court need not accept as true the complaint's legal conclusions. *Iqbal*, 556 U.S. at 678–79 (quotations and citation omitted).

Importantly, the purpose of a 12(b)(6) motion to dismiss is to test the complaint. A 12(b)(6) motion is not "an appropriate device for testing the truth of what is asserted or for determining whether plaintiff has any evidence to back up what is in the complaint." *Twombly*, 550 U.S. at 585, 127 S. Ct. 1955 (Stevens, J., dissenting) (emphasis added). Indeed, given Plaintiff's confinement, Defendants likely control access to relevant factual information unavailable to Plaintiff before discovery, which Plaintiff is only entitled to *if* he survives Defendant's present Motion to Dismiss. So long as Plaintiff plausibly states a claim, Plaintiff's Complaint will not be dismissed merely because it lacks factual context presently available only

to Defendants.

### III.

Under 42 U.S.C. § 1983, a plaintiff may sue any "person" who, under the color of state law, subjects any citizen to the deprivation of any rights, privileges, or immunities secured by the Constitution *See* 42 U.S.C. § 1983. Accordingly, to "prevail on a cause of action under § 1983, a plaintiff must prove (1) the deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under the color of state law. *Winkler v. Madison Cnty.*, 893 F.3d 877, 890 (6th Cir. 2018); *Shadrick v. Hopkins Cnty.*, 805 F.3d 724, 736 (6th Cir. 2015); *see also Jones v. Muskegon Cnty.* 625 F.3d 935, 941 (6th Cir. 2015).

### A.

Plaintiff alleges Defendants deprived him of both his Fourteenth and Eighth Amendment rights though their deliberate indifference to his medical needs. *See* ECF No. 1 at PageID.7, 10. But, importantly, Eighth Amendment freedom from cruel and unusual punishment provides *prisoners* with a right to adequate medical care, whereas Fourteenth Amendment due process provides *pretrial detainees* with such right. *See Greene v. Crawford Cnty., Michigan*, 22 F.4th 593, 605 (6th Cir. 2022) (noting "the Eighth Amendment does not apply to pretrial detainees" and "[i]nstead, pretrial detainees have a constitutional right to be free from deliberate indifference to serious medical needs under the Due Process Clause of the Fourteenth Amendment); *Absher v. Berlin*, No. 1:20-CV-13383, 2021 WL 2579754 (E.D. Mich. June 23, 2021) ("[I]f the plaintiff was a convicted prisoner at the time of the incident, then the Eighth Amendment deliberate indifference standard" applies but that "the Fourteenth Amendment is the source of a pretrial detainee's . . . claim"). This distinction is important. "The language of the two Clauses differs, and the nature of the claims often differs. And, most importantly, pretrial detainees (unlike convicted prisoners)

cannot be punished at all[.]" *Kingsley v. Hendrickson*, 576 U.S. 389, 400, (2015).

Under the modern framework,[4] a *pretrial detainee* asserting a deliberate-indifference claim under the Fourteenth Amendment must show: (1) an objectively serious medical need; and (2) subjectively, that the defendant's action or omission was intentional (not accidental) and that the defendant either (a) acted intentionally to ignore the pretrial detainee's serious medical need, or (b) recklessly failed to act reasonably to mitigate the risk the serious medical need posed to the detainee. *Id.* at 597; *Greene*, 22 F.4th at 607; *Griffith v. Franklin Cnty.*, 975 F.3d 554, 570 (6th Cir. 2020).

A *prisoner* asserting a deliberate-indifference claim under the Eight Amendment must show: (1) an objectively serious medical need, and "(2) that the defendant knew 'of and disregard[ed] an excessive risk to [the prisoner's] health or safety.'" *Est. of Abbey v. Herring*, 598 F. Supp. 3d 572, 583–84 (E.D. Mich. 2022) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837, 114 S. Ct. 1970, 128 L.Ed.2d 811 (1994); *Rhinehart v. Scutt*, 894 F.3d 721, 737–38 (6th Cir. 2018)). Under the second, subjective prong, a plaintiff must demonstrate a high standard of culpability, equivalent to criminal recklessness. *Id.*; *Greene*, 22 F.4th at 605; *Griffith*, 975 F.3d at 568. In other words, the plaintiff must show that each defendant "'subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then

---

[4] Historically, both Fourteenth and Eighth Amendment deliberate indifference claims were analyzed "under the same rubric" *Greene v. Crawford Cnty.*, 22 F.4th 593, 605 (6th Cir. 2022); *Brawner v. Scott Cnty.*, 14 F.4th 585, 591 (6th Cir. 2021), cert. denied, 143 S. Ct. 84, 214 L. Ed. 2d 13 (2022*); Richmond v. Huq*, 885 F.3d 928, 937 (6th Cir. 2018); *Villegas v. Metro. Gov't of Nashville*, 709 F.3d 563, 568 (6th Cir. 2013). Originally, a deliberate-indifference plaintiff needed to satisfy the same objective and subjective elements regardless of whether their claim was cognizable under the Fourteenth or Eighth Amendment. *See Greene*, 22 F.4th at 605. In 2021, however, the Sixth Circuit decided *Brawner v. Scott County* and held that the Supreme Court's decision in *Kingsley v. Hendrickson* required "modification of the subjective prong of the deliberate-indifference test for pretrial detainees." *Brawner*, 14 F.4th at 596.

disregarded that risk' by failing to take reasonable measures to abate it." *Rhinehart*, 894 F.3d at 738 (quoting *Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2001)).

### B.

### 1.

Plaintiff brings deliberate-indifference claims against Defendants Mischloney and Pioszak under both the Eighth and the Fourteenth Amendments. ECF No. 1 at PageID.7, 10. But it must be one or the other. If Plaintiff was a prisoner under sentence at Alpena County Jail, his deliberate-indifference claim is only cognizable under the Eighth Amendment. But if Plaintiff was merely a pretrial detainee awaiting sentence, his claim is only cognizable under the Fourteenth Amendment. *See Greene*, 22 F.4th at 605. This distinction can be important because the subjective prong of a deliberate indifference claim depends on which rights have been allegedly deprived. *Compare Brawner*, 14 F.4th at 597 (discussing the subjective prong for pre-trial detainee deliberate indifference under the Fourteenth Amendment), *with Rhinehart,* 894 F.3d at 738 (discussing the subjective prong for prisoner deliberate indifference under the Eighth Amendment").

The ACH Defendants argue that Plaintiff was a pretrial detainee whose claims are only cognizable under the Fourteenth Amendment. ECF No. 6 at PageID.40–41. But Plaintiff's status between May and August 2020 is unclear. The Complaint does not state whether Plaintiff was a prisoner under sentence or a pretrial detainee during the relevant months. Indeed, the Complaint does not mention why or how Plaintiff became confined[5] at Alpena County Jail nor why, when, or how Plaintiff was eventually released. The Complaint merely states Plaintiff "was confined by the Alpena County Jail," ECF No. 1 at PageID.2, and that, at some point, he "was finally released."

---

[5] Notably, Plaintiff's Complaint uses inconsistent language to describe his "confinement." *Compare* ECF No. 1 at PageID.7, 10, 13–16 (stating Plaintiff was "incarcerated"), *with id.* at PageID.13, 15 (stating Plaintiff was "detained").

*Id.* at PageID.8, 11. Although the length of Plaintiff's confinement at Alpena County Jail suggests he was a pre-trial detainee, Plaintiff has stated a valid claim under both deliberate-indifference frameworks.

**2.**

Regardless of the proper Constitutional basis for Plaintiff's deliberate indifference claim, Plaintiff has sufficiently pleaded the first prong, that his medical needs were objectively serious.

Under both Fourteenth and Eighth Amendment deliberate indifference, an objectively serious medical need is one "that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Brawner*, 14 F.4th at 607 (quoting *Harrison v. Ash*, 539 F.3d 510, 518 (6th Cir. 2008)).

Plaintiff alleges he arrived at Alpena County Jail with an infection in his right ankle which was "draining fluids" and that he disclosed the infection immediately during his intake.[6] ECF No. 1 at PageID.5. As the wound worsened to the point of swelling, splitting open, and discharging yellow fluids, Mischloney and Pioszak determined that his wound was a "right ankle lateral ulcer" and advised Plaintiff to use diclofenac gel and regularly take pain medication. *Id.* But the wound continued to worsen, growing bigger, burning, and causing Plaintiff's entire right foot to be "swollen, bruised, and numb." *Id.* Plaintiff alleges that Mischloney and Pioszak then recommended wound cleaning and referred Plaintiff to the Wound Clinic. *Id.* at PageID.6. There, doctors advised Plaintiff that, given his periwound maceration,[7] he "needed to change the dressing every three days with foam."[8] *Id.* In August 2020, Plaintiff was referred to yet another specialist because

---

[6] Although the Complaint fails to note who Plaintiff told about his infection, it is reasonable to infer it was someone who worked for either Defendant Alpena County Jail or Defendant ACH.
[7] Although the Complaint fails to expressly identify who diagnosed Plaintiff with this condition, it is reasonable to infer that Dr. Straley or another Wound Clinic medical professional did so.
[8] The ACH Defendants emphasize this instruction implying it was Plaintiff's responsibility to have

"osteomyelitis" was suspected. *Id.* at PageID.6–7.

These facts show Plaintiff received several medical diagnoses which required treatment, thus qualifying his condition as a serious medical need. Although the ACH Defendants emphasize that Plaintiff's osteomyelitis—an infection of the bone—was merely "suspected" and not diagnosed, *see* ECF No. 6 at PageID.39, 45, 48, Plaintiff has sufficiently pleaded a condition so severe that any person would obviously recognize the need for medical intervention. *See Smith v. Campbell Cnty., Kentucky*, No. CV 16-13-DLB-CJS, 2019 WL 1338895, at *9 (E.D. Ky. Mar. 25, 2019) (noting that osteomyelitis in plaintiff's spine was indisputably objectively serious). "Osteomyelitis is a serious condition that requires immediate treatment." *Osteomyelitis*, CLEVELAND CLINIC, https://my.clevelandclinic.org/health/diseases/9495-osteomyelitis (last updated Dec. 1, 2021) [https://perma.cc/2YMQ-4GZZ]. Complications of osteomyelitis include abscesses, increased risk of skin cancer, and bone death, which may require amputation. *Id.* Notably, Plaintiff attributes his amputation to, in part, Defendants' denial of the referral after osteomyelitis was suspected. ECF No. 1 at PageID.7.

In sum, Plaintiff has sufficiently shown an objectively serious medical need to satisfy the first prong of a deliberate indifference claim under either the Fourteenth or Eighth Amendment.

**3.**

If Plaintiff was a pretrial detainee whose deliberate indifference claims are cognizable under the Fourteenth Amendment, Plaintiff has also sufficiently pleaded facts establishing the second, subjective prong. Plaintiff has shown facts suggesting Defendants Mischloney and Pioszak

---

the proper dressings and foam to care for himself. It is reasonable to infer, however, that Plaintiff, a man confined in a county jailhouse, would not have access to such dressings and foam unless access was provided to him by Defendant ACH or its employees, who were Plaintiff's contractual health care providers while confined at Alpena County Jail. *See* ECF No.1 at PageID.3.

intentionally acted to either ignore Plaintiff's serious medical need, or recklessly failed to mitigate it. *See Brawner*, 14 F.4th at 597; *Greene*, 22 F.4th at 607; *Griffith*, 975 F.3d at 570.

Three facts are central to Plaintiff's deliberate indifference claim: (1) Defendants treated Plaintiff's wound with mere "Tylenol and ibuprofen and a topical pain relief gel" instead of "antibiotics or any antibacterial medication or ointment," despite knowledge of the infection and its obvious nature, *See* ECF No. 11 at PageID.79–80; (2) Defendants failed to provide appropriate dressings to care for Plaintiff's wound, as prescribed by Dr. Straley of the Wound Clinic, instead providing Defendant with mere band-aids, *See id.* at PageID.80; and (3) Defendants denied Plaintiff's referral to a specialist after osteomyelitis "was suspected." *Id.* at PageID.69–70.

In their Motion to Dismiss, the ACH Defendants argue (1) that the Complaint's facts show Defendants Mischloney and Pioszak provided timely and adequate medical care (2) that Defendant's recommendation that Plaintiff use pain medication was proper in response to his complaints of pain, ECF No. 6 at PageID.37, 44; (3) it was Plaintiff's responsibility to change his dressings in accordance with Dr. Straley's instructions, *id.* at PageID.38; and (4) Plaintiff cannot identify the specific Defendant who denied Plaintiff's osteomyelitis referral. *Id.* at PageID.45, 48.

Undoubtedly, Defendants Mischloney and Pioszak provided prompt medical care to Defendant. *See* ECF No. 1 at PageID5–6 (indicating Defendants examined Plaintiff within one day of his medical complaints). And the ACH Defendants are correct that "a mere disagreement with medical treatment" does not rise to the level deliberate indifference. *Id.* at PageID.46; *Vontz v. Hotaling*, No. 2:19-cv-12735, 2023 U.S. Dist. LEXIS 62994, at *15-16 (E.D. Mich. Mar. 6, 2023). But deliberate indifference concerns more than the timeliness of care and Plaintiffs' Complaint pleads more than a mere disagreement with treatment.

Plaintiff made his wound known to Alpena County Jail and/or Defendant ACH employees

as early as his May 2020 intake screening. ECF No. 1 at PageID.5. Defendants knew of the wound's worsening condition throughout the entirety of Plaintiff's confinement, from both personally examining the wound and from Plaintiff's complaints. On June 16, 2020, Plaintiff first complained to "jail nurse[s]"[9] about severe pain caused by the wound. *Id.* On June 17, Mischloney and Pioszak examined Plaintiff, noting that the wound would "swell and split open," discharging yellow fluid. *Id.* On June 21, 2020, despite Mischloney and Pioszak's recommendation that Plaintiff take pain medication, Plaintiff again advised a "jail nurse" that his wound had "gotten worse, was bigger, . . .burned, and that his foot was swollen, bruised, and numb." *Id.* Mischloney and Pioszak examined Plaintiff again on June 22, 2020 and noticed that Plaintiff's wound was "leaking" clear fluid. *Id.* at PageID.6. Defendant ACH and its employees, including Mischloney and Pioszak, were contracted to provide medical care to Alpena County Jail inmates like Plaintiff. *See id.* at PageID.3. But adequate dressings, as prescribed by Wound Clinic specialists, were not provided to Plaintiff.[10] *See id.* at PageID.6. Plaintiff only had access to band-aids. *Id.*

It is also reasonable to infer that Mischloney and Pioszak knew of or were involved in the osteomyelitis suspicion, the alleged referral, and the alleged denial. The Complaint demonstrated that Mischloney and Pioszak were involved in diagnosis and referrals at Alpena County Jail. *See id.* at PageID.5–6. The ACH Defendants note that the denial of Plaintiff's referral to a specialist,

---

[9] It is reasonable to infer, given Defendant ACH's contractual obligation to provide medical care to Alpena County Jail inmates, that these nurses were employees of Defendant ACH.

[10] ACH Defendants emphasize that the Wound Clinic doctor told Plaintiff that "[h]e needed to clean and change the dressings" and "Plaintiff's Complaint that the Alpena County Jail did not have appropriate dressings for him is not identified as an allegation against any of the ACH Defendants." ECF No. 6 at PageID.38–39 (emphasis in original). But these arguments ignore the reality of Plaintiff's status as an incarcerated individual and ignore the fact that Defendant ACH and its employees, including Mischloney and Pioszak, were contractually obligated to provide medical care for Alpena County Jail inmates. It is reasonable to infer that, although Plaintiff medically needed appropriate dressings, the ACH Defendants did not provide them.

"indicates that, at best, whomever allegedly denied the referral did not believe that the referral was warranted at that time, which would amount to a mere disagreement with medical treatment with another provider or Plaintiff's own medical wishes." ECF No. 6 at PageID.46. But this misconstrues the motion to dismiss standard—that all inferences of fact must be resolved in favor of the nonmoving Plaintiff. The denial of a subsequent specialist referral when osteomyelitis was suspected shows more than a mere disagreement of medical treatment—it shows that Plaintiff's suspected serious medical need was intentionally or recklessly ignored by his healthcare providers, including Defendants Mischloney and Pioszak.

In *Brawner*, the Sixth Circuit reversed the grant of a defendant's motion for summary judgement on a Fourteenth Amendment deliberate indifference claim brought by a plaintiff who was denied prescriptions by jail officials and suffered seizures as a result. *See Brawner* 14 F.4th. at 588–590, 601. There, like here, the plaintiff indicated a medical need upon intake screening. *See id.* at 589 ("On a written [intake] questionnaire, [plaintiff] answered that she needed to continue her prescription medications."). There, like here, it was unclear whether this initial notice of medical need "ever made it to" the individual nurse defendant. *Id.* However, like here, the individual nurse defendant personally examined the plaintiff throughout the plaintiff's confinement. *Id.* The Sixth Circuit noted that, from these facts, the plaintiff may have satisfied the subjective prong of Fourteenth Amendment deliberate indifference, noting it is "reasonable [to] infer that [the jail nurse] received [notice of the intake] and failed to take the necessary steps to ensure that [the plaintiff] received" the medical care she required. *Id.* at 597–98.

Given Defendants Mischloney and Pioszak's notice of Plaintiff's worsening wound—both through examinations and Plaintiff's complaints—and Plaintiff's subsequent denial of necessary treatment and referrals, Plaintiff has sufficiently pleaded facts showing Defendants Mischloney

and Pioszak intentionally acted to either ignore Plaintiff's objectively serious medical need or recklessly failed to mitigate it.

**4.**

The facts in Plaintiff's Complaint that satisfy the subjective prong of Plaintiff's Fourteenth Amendment deliberate indifference claim also satisfy the subjective prong of Eighth Amendment deliberate indifference.

Plaintiff alleges that Defendants Mischloney and Pioszak knew of the worsening condition of Plaintiff's wound and referred Plaintiff to the Wound Clinic as a result. *See* ECF No. 1 at PageID.7–6. Dr. Straley of the Wound Clinic examined Plaintiff and instructed him to cover the wound with special dressings and change these dressings every three days. *Id.* at PageID.6. Plaintiff alleges that Defendant ACH, and its employees, including Defendants Mischloney and Pioszak, were contracted by Defendant Alpena County to "*provide*[] healthcare services" to inmates like Plaintiff. *Id.* at PageID.3. But Plaintiff alleges he was only *provided* with a band-aid to cover his wound, which Mischloney and Pioszak had personally observed (1) "swell and split open;" (2) discharge yellow fluid; (3) leak clear fluid; and (4) cause Plaintiff severe pain. *Id.* at PageID.5–6. Further, it is reasonable to infer that the Defendants Mischloney and Pioszak, who referred Plaintiff to the Wound Clinic and were responsible for his medical care, knew of his periwound maceration diagnosis prior to the denial of Plaintiff's osteomyelitis referral. *See id.*

Plaintiff's case is analogous to *Boretti v. Wiscomb*, in which the Sixth Circuit held a prisoner-plaintiff sufficiently stated an Eighth Amendment deliberate indifference claim against an individual nurse-defendant. 930 F.2d 1150 (6th Cir. 1991). The *Boretti* plaintiff, like Plaintiff here, notified prison officials upon intake of a wound which needed treatment and pain medication. *Id.* at 1151–52. Although the *Boretti* plaintiff was denied care for six days, unlike Plaintiff who

was promptly seen by ACH employees, the *Boretti* plaintiff, "was given no dressings for the wound" which "interrupted [a] prescribed treatment plan[.]" *See id.* at 1152, 1154. The Sixth Circuit found this sufficient to establish the subjective prong of Eighth Amendment deliberate indifference because the defendant, with imputed knowledge of the treatment plan, failed to "carry [it] out." *Id.* at 1154. The same result here. Dr. Straley's instructions that Plaintiff use adequate dressings and change them every three days with foam was a "prescribed treatment plan" to heal Plaintiff's wound. *See* ECF No. 1 at PageID.6. The facts of the Complaint—that Defendants Mischloney and Pioszak referred Plaintiff to the Wound Clinic in the first place and were responsible for providing Plaintiff with healthcare—sufficiently plead that Mischloney and Pioszak had "imputed knowledge" of this treatment plan but, like the *Boretti* defendant, failed to "carry it out."

Plaintiff has sufficiently pleaded that Defendants Mischloney and Pioszak (1) perceived that Plaintiff's wound inferred substantial risk—through examinations and Plaintiff's complaints, (2) drew such inference themselves—through prescriptions and referrals, and then (3) disregarded such risk by failing to take reasonable measures to mitigate—through failing to provide adequate dressings and failing to ensure Plaintiff's referral to a specialist for osteomyelitis. *See Rhinehart*, 894 F.3d at 738; *Comstock*, 273 F.3d at 703. Plaintiff has sufficiently pleaded the subjective prong of deliberate indifference under the Eighth Amendment.

Accordingly, Plaintiff's Complaint states a valid deliberate indifference claim under both the Fourteenth and the Eight Amendment against Defendants Mischloney and Pioszak.

## IV.

### A.

In addition to Plaintiff's direct § 1983 allegations against Mischloney and Pioszak, Plaintiff

also alleges ACH is liable under § 1983 for depriving Plaintiff of his Fourteenth and Eighth Amendment rights. In *Monell*, the Supreme Court held that municipalities can be treated as "persons" and subject to § 1983 liability for their "official policies." *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690, 98 S. Ct. 2018, 2035, 56 L. Ed. 2d 611 (1978). Since *Monell*, the Sixth Circuit has held that private entities, like ACH, may also be treated as "persons" and subject to § 1983 liability when the entity performs traditional state functions like providing medical care to inmates or arrestees. *Winkler*, 893 F.3d at 904 ("A private entity . . . that contracts to provide medical services at a jail can be held liable under § 1983 because it is carrying out a traditional state function"); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 817–18 (6th Cir. 1996) (treating a private prison corporation as a "person" for the purpose of. § 1983).

Generally, there are four theories or "avenues a plaintiff may take to prove the existence of a [defendant's] illegal policy or custom. The plaintiff can look to (1) the [defendant's] legislative enactments or official agency policies; (2) actions taken by officials with final decision-making authority; (3) a policy of inadequate training or supervision; or (4) a custom of tolerance or acquiescence of federal rights violations." *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005); *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480, 106 S. Ct. 1292, 89 L.Ed.2d 452 (1986); *Stemler v. City of Florence*, 126 F.3d 856, 865 (6th Cir.1997); *Doe v. Claiborne County*, 103 F.3d 495, 507 (6th Cir.1996). Here, Plaintiff chooses two. Plaintiff alleges that ACH is liable under *Monell*, first, because of its "customs, policies, and established practices" and, second, because of its failure to adequately train employees. *See* ECF No. 1 at PageID.12–14 (Count III).

**B.**

Plaintiff first alleges that Defendant ACH violated § 1983 through its custom and practice of (1) "ignoring substantial risks of serious harm to inmates, in favor of cursory treatment, no

treatment at all, or deliberately choosing less efficacious treatment because it was more convenient and less expensive[,]" ECF No. 1 at PageID.13, 15, and (2) "failing to refer inmates for necessary off-site medical treatment and diagnostics despite the obvious need for off-site treatment and diagnostics which [Defendant ACH] did not have the capability to provide, and failing to refer inmates for hospitalization or proper medical evaluation." *Id*. at PageID.14, 16

But Plaintiff's must plausibly plead more. In the absence of a written policy, to show that ACH's practices and customs rise to the level of an official illegal policy sufficient for *Monell* liability, Plaintiff must show: (1) a clear and persistent pattern of illegal activity; (2) that Defendant ACH had constructive or actual notice of this pattern; (3) Defendant ACH's "tacit approval of the unconstitutional conduct, such that their deliberate indifference in their failure to act can be said to amount to an official policy of inaction"; and (4) causation—that Defendant ACH's custom was the "moving force" or "direct causal link in the constitutional deprivation." *See Thomas*, 398 F.3d at 429 (quoting *Doe*, 103 F.3d at 508). Plaintiff's Complaint does not make it past the first step because Plaintiff did not allege any facts demonstrating a persistent pattern of illegal activity.

The Sixth Circuit has repeatedly held, to establish a pattern or practice of a defendant's illegal conduct sufficient for *Monell* liability, a plaintiff must show that others were subject to similar deprivations or constitutional injuries. *Compare Thomas*, 398 F.3d 426, 434 (granting summary judgement in favor of a municipal § 1983 defendant because the plaintiff did not "reach beyond the facts of [plaintiff's] case to show any possibility of a pattern"); *Winkler*, 893 F.3d at 902 (affirming summary judgement in favor of a municipal § 1983 defendant because the plaintiff "discuss[ed] only [plaintiff's] treatment"). *Stewart v. City of Memphis, Tennessee*, 788 F. App'x 341 (6th Cir. 2019) (rejecting plaintiff's custom theory for *Monell* liability because the record did not indicate any other allegedly unlawful investigation, aside from the one plaintiff complained

of), *with Woodall v. Wayne Cnty.*, 590 F. Supp. 3d 988, 1008 (E.D. Mich. 2022), *reconsideration denied*, No. 17-13707, 2022 WL 1469210 (E.D. Mich. May 10, 2022) (finding "ample evidence of a clear pattern" of a municipal defendant's illegality because the plaintiffs "submitted numerous declarations from [other] detainees at the [j]ail" which alleged similar constitutional violations).

Plaintiff provides no facts which "reach beyond" his case. Instead, the facts of Plaintiff's Complaint merely allege (1) Defendants provided *Plaintiff* pain medication instead of medication to treat his infection (although, as the ACH Defendants emphasize, Plaintiff directly complained of pain); (2) Defendants did not provide *Plaintiff* with dressings to treat Plaintiff's wound, as directed by the Wound Clinic; and (3) *Plaintiff's* osteomyelitis referral was denied.

Accordingly, Plaintiff has not stated a *Monell* claim against Defendant ACH under a practice or custom theory.

## C.

Although Plaintiff does not state a *Monell* claim under a practice or custom theory, Plaintiff states a plausible *Monell* claim against Defendant ACH under a failure to train theory, alleging that ACH violated § 1983 through its failure to adequately train its employees "to monitor and address inmate[s]' serious medical conditions and provide proper diagnostics and treatment." ECF No. 1 at PageID.14.

To succeed on a failure to train or supervise claim, Plaintiff must prove that (1) the training or supervision was inadequate for the tasks performed; (2) the inadequacy was the result of Defendant ACH's deliberate indifference; and (3) the inadequacy was closely related to or directly caused the injury. *See Ellis ex rel. Pendergrass v. Cleveland Mun. School Dist.*, 455 F.3d 690, 700–01 (6th Cir. 2006) (citing *Russo v. City of Cincinnati*, 953 F.2d 1036, 1046 (6th Cir. 1992)). There are "at least two situations in which inadequate training could be found to be the result of

deliberate indifference." *Cherrington v. Skeeter*, 344 F.3d 631, 646 (6th Cir. 2003).

## 1.

First, Plaintiff has pleaded facts suggesting the inadequacy of ACH employee training "to monitor and address inmate[s]' serious medical conditions and provide proper diagnostics and treatment." ECF No. 1 at PageID.14. Plaintiff alleges that Defendant ACH "provide[d] healthcare services in the Alpena County Jail according to contract." *Id.* at PageID.3. Accordingly, ACH employees knew of Plaintiff's "sore" from the moment he disclosed this injury at intake. *Id.* at PageID.5. ACH employees knew that Plaintiff's sore quickly worsened to an open wound which would swell, split, and discharge yellow fluid. *Id.* ACH employees knew Plaintiff's wound would bleed and cause Plaintiff headaches and drowsiness. *See id.* ACH employees knew that Plaintiff's wound burned and rendered his entire right foot numb. *Id.* ACH employees knew, or reasonably should have known, as Plaintiff's healthcare providers, that the wound worsened to cause periwound maceration. *See id.* at PageID.6. ACH employees knew, or should have reasonably known, that Wound Clinic doctors prescribed Plaintiff with a specific treatment plan calling for special dressings. *Id.* ACH employees knew, or should have reasonably known, that Plaintiff was referred to a specialist for suspected osteomyelitis. *Id.* at PageID.6–7. Yet, despite this knowledge and notice, Plaintiff was provided with only a band-aid and was denied an outside specialist referral for continued care. *Id.*

The ACH Defendants claim that Mischloney and Pioszak's initial referral of Plaintiff to the Wound Clinic demonstrate that their training was adequate. ECF No. 6 at PageID.51. Not necessarily. Importantly, Plaintiff bases his *Monell* failure to train claim, like all of his claims, largely on Defendants' conduct *after* this initial Wound Clinic referral, emphasizing both Defendants' failure to provide adequate dressings after the Wound Clinic specifically prescribed

them to Plaintiff and Defendant's denial of Plaintiffs *subsequent* osteomyelitis referral. *See* ECF No. 1 at PageID.6–7.

These facts plausibly support Plaintiff's claim that Defendant ACH, Plaintiff's contractual healthcare provider while confined at Alpena County Jail, did not adequately train its employees on how to monitor inmates' medical needs and provide proper medical treatment. Thus, Plaintiff's failure-to-train claim survives Defendants' Motion to Dismiss.

**2.**

Next, there are "at least two situations in which inadequate training could be found to be the result of deliberate indifference." *Cherrington v. Skeeter*, 344 F.3d 631, 646 (6th Cir. 2003).

**a.**

First, a plaintiff can demonstrate deliberate indifference by showing that the municipality has failed to act "in response to repeated complaints of constitutional violations by its officers." *Id*. (quoting *Brown v. Shaner*, 172 F.3d 927, 931 (6th Cir. 1999)). Under this approach, Plaintiff must show that ACH was aware of "prior instances of unconstitutional conduct" such that ACH "was clearly on notice that the training in this particular area was deficient and likely to cause injury" and yet "ignored a history of abuse." *Fisher v. Harden*, 398 F.3d 837, 849 (6th Cir. 2005). This is the most common way of proving deliberate indifference. *Ouza v. City of Dearborn Heights*, 969 F.3d 265, 287 (6th Cir. 2020).

But Plaintiff has not alleged any "prior instances of unconstitutional conduct demonstrating that [Defendant ACH] ignored a history of abuse and was clearly on notice that the training in this particular area was deficient and likely to cause injury[,]" so this approach is inapplicable. *See Miller v. Sanilac Cnty.*, 606 F.3d 240, 255 (6th Cir. 2010) (citing *Fisher*, 398 F.3d at 849); *Victor v. Reynolds*, 582 F. Supp. 3d 516, 522 (E.D. Mich. 2022).

- 20 -

**b.**

Second, a plaintiff can demonstrate deliberate indifference under *Monell* by showing a defendant's "failure to equip [its employees] with specific tools to handle recurring situations." *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 409, 117 S. Ct. 1382, 1391, 137 L. Ed. 2d 626 (1997). Indeed, a plaintiff can show an employer's deliberate indifference if "the need for more or different training is so obvious and the inadequacy [is] so likely to result in the violation of constitutional rights." *City of Canton v. Harris*, 489 U.S. 378, 390, 109 S. Ct. 1197, 103 L. Ed. 2d 412 (1989)). Under this second deliberate indifference approach, a plaintiff need not show a pattern of unconstitutional conduct. *Shadrick v. Hopkins Cnty.*, 805 F.3d 724, 739 (6th Cir. 2015) (citing *Connick v. Thompson*, 563 U.S. 51, 63–64 (2011)). Instead, "Plaintiff can show deliberate indifference based on 'single-incident liability' if the risk of the constitutional violation was so obvious or foreseeable that Defendant ACH was deliberately indifferent for failing to prepare its employees for it." *Victor*, 582 F. Supp. 3d at 522 (citing *Connick*, 563 U.S. at 63). In other words, Plaintiff must be able to show "that [ACH], through its policymaker(s), was on notice that, absent additional training, it was so highly predictable that [one if its nurses] would [fail to administer adequate medical care] as to amount to conscious disregard for [Plaintiff's rights." *Id.* at 523 (alteration in original) (quoting *Harvey v. Campbell Cnty.*, 453 F. App'x 557, 567 (6th Cir. 2011)).

Here, Plaintiff's Complaint contemplates the training of ACH employees. The Complaint notes the distinction between when ACH employees—Mischloney and Pioszak—initially referred Plaintiff to an outside Wound Clinic specialist but that his subsequent continued care referral when osteomyelitis was suspected was denied. *See* ECF No. 1 at PageID.6–7. This distinction reasonably suggests that ACH employees, trained and educated medical professionals, received *some* training

on when outside specialist referrals were necessary.

With this training in mind, the facts of the Complaint show "the need for more or different training is so obvious and the inadequacy so likely to result in the violation of constitutional rights," that Defendant ACH can reasonably be said to have been deliberately indifferent to the need. *See Victor*, 582 F. Supp. 3d at 522; *City of Canton*, 489 U.S. at 390, 109 S. Ct. 1197. Specifically, Plaintiff alleges that, although Defendants referred him to outside specialists at the Wound Clinic, the necessary dressings prescribed by the Wound Clinic to treat his worsening wound were not available at Alpena County Jail. *See id.* The facts of the Complaint give rise to the notion that ACH employees were trained to make referrals to outside specialists yet not equipped with the "specific tools" to ensure that any treatment plan prescribed by an outside specialist is followed. What good is a specialist's diagnosis if a patient lacks access to the prescribed treatment? Further, Plaintiff alleges that once "osteomyelitis was suspected," a subsequent specialist referral was denied. *Id.* As Plaintiff's healthcare providers, it is reasonable to infer that ACH employees had *some* knowledge or participation in the referral, denial, or both. Accordingly, the facts of the Complaint plausibly indicate that ACH employees—trained medical professionals who had notice of Plaintiff's worsening wound—knew that Plaintiff may have been suffering from osteomyelitis but failed to ensure Plaintiff was seen by an appropriate specialist.

Importantly, this is not the first time this Court has found that a prisoner-plaintiff has stated a valid failure to train *Monell* claim against this exact Defendant. In *Victor v. Reynolds*, this Court recently held that a plaintiff stated a valid "failure to train" *Monell* claim against Defendant ACH when the plaintiff alleged that ACH employees were on notice of his need for seizure medication but failed to provide this medication to him, resulting in injuries caused by a seizure. This Court noted that such failure to train *Monell* theory:

> would likely fail against police officers . . . But for a private
> healthcare provider that specifically contracts to provide medical
> personnel to a prison for the purpose of approving medication
> requests for inmates, it is quite obvious that the provider would need
> to provide adequate training on making such decisions. Indeed,
> ACH could be deliberately indifferent by failing to train its nurses
> in whether to administer medication to an inmate . . . because it is
> obvious that its nurses will need to make such a determination.

*Victor*, 582 F. Supp. 3d at 524. The same result here. It is "quite obvious" that ACH employees–healthcare providers for incarcerated individuals—would need adequate training on following treatment plans prescribed by outside specialists, as well as determining when a medical condition requires referral, because it is quite obvious that ACH employees need to make such determinations frequently.

In sum, Plaintiff's Complaint contains facts which reasonably suggest Defendants' inadequate training could be the result of deliberate indifference, the second requirement of a failure to train *Monell* claim.

### 3.

Lastly, Plaintiff sufficiently pleads causation for his *Monell* failure to train claim. Plaintiff first alleges that Defendant ACH's failure to train its employees resulted in the employees' inability to "monitor and address serious medical conditions and provide proper diagnostics and treatment." ECF No. 1 at PageID.16. Plaintiff then alleges that his ultimate injury—amputation—was the result of the "delay and subsequent refusal of treatment while . . . incarcerated." *Id.* at PageID.7.

Because Plaintiff's Complaint includes facts which sufficiently show inadequate training, deliberate indifference, and causation, Plaintiff sufficiently pleads a *Monell* claim under 42 U.S.C. § 1983 against Defendant ACH.

## V.

Accordingly, it is **ORDERED** that Defendants Advanced Correctional Healthcare, Debra

Mischloney, and Dorothy Pioszak's Motion to Dismiss, ECF No. 6, is **DENIED**.

**This is not a final order and does not close the above-captioned case**.

Dated: October 5, 2023                          s/Thomas L. Ludington
                                                THOMAS L. LUDINGTON
                                                United States District Judge