**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**

CHRISTOPHER SMOLINSKI,

Case No. 23-cv-10998
Hon. Thomas L. Ludington
Magistrate Judge: Patricia T. Morris

Plaintiff

v.

DEBRA MISCHLONEY in her individual capacity,
DOROTHY PIOSZAK, in her individual capacity,
ALPENA COUNTY, and
ADVANCED CORRECTIONAL HEALTHCARE, INC.,

Defendant(s).

---

KEVIN S. ERNST (P44223)
HANNAH R. FIELSTRA (P82101)
**Ernst Law Firm, PLC**
Counsel for Plaintiff
645 Griswold, Suite 4100
Detroit, Michigan 48226
(313) 965-5555
hannah@ernstlawplc.com

CHAPMAN LAW GROUP
Devlin Scarber (P64532)
Nicholas B. Pillow (P83927)
Attorneys for Advanced Correctional Healthcare, Inc., Dorothy Pioszak, N.P., and Debra Mischloney, R.N.
1441 West Long Lake Rd., Suite 310
Troy, MI 48098
(248) 644-6326
dscarber@chapmanlawgroup.com
npillow@chapmanlawgroup.com

---

**PLAINTIFF'S RESPONSE TO ADAVANCED CORRECTIONAL HEALTHCARE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (ECF NO. 31)**

NOW COMES Plaintiff, CHRISTOPHER SMOLINSKI, by and through counsel, and for his Response to Advanced Correctional Healthcare Defendants' Motion for Summary Judgment submits the following:

**INTRODUCTION**

Plaintiff Christopher Smolinski brings instant action against Defendants Advanced Correctional Healthcare, Inc, Debra Mischloney, and Dorothy Pioszak who had direct contact with Plaintiff, charted the condition of his wound, and failed to provide medical treatment necessary to his condition, which lead to multiple subsequent surgeries and an amputation. Also named as a Defendant is Alpena County, whose policy, practice, or custom of inadequate training and failure to provide basic medical necessities led to Plaintiff's injury; however, Plaintiff and Defendant Alpena County reached a resolution, which is the subject of Plaintiff's pending Motion for Voluntary Dismissal (ECF No. 35). Plaintiff brought claims for violations of his Fourteenth and Eighth Amendment rights, *Monell* liability as to Defendant Advanced Correctional Healthcare, Inc. and Alpena County, brought under 42 U.S.C. § 1983. **ECF No. 1**. On October 5, 2023, this Court denied Defendants' Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6) and allowed the action to proceed to discovery. **ECF No. 19**.

As described further herein, it is clear that Defendants are not entitled to Summary Judgment, as there exist genuine issues of material fact, when the facts are

viewed in the light most favorable to the Plaintiff, as to 1) whether Defendants' actions constituted deliberate indifference; and 2) whether Defendant Advanced Healthcare was on notice that it was predictable that one of its nurses would fail to administer adequate medical care as to amount to a conscious disregard for Plaintiff's rights, absent additional training. As explained herein, these issues should be resolved in favor of Plaintiff and against Defendants and, at the very least, Plaintiff is entitled to try his case before a jury.

## STATEMENT OF FACTS

As Plaintiff alleged in his complaint, in May of 2020, Plaintiff Christopher Smolinski was incarcerated at Alpena County Jail. **ECF No. 1, PageID.4**. He was serving a sentence from May 12, 2020 to August of 2020. **ECF No. 31-2, PageID.327, 346**.

Defendants Debra Mischloney and Dorothy Pioszak are employees of Defendant Advanced Correctional Healthcare. Defendant Mischloney is a nurse who assesses and sees inmate patients in Alpena County Jail, including after a kite or medical request is submitted by an inmate. **ECF No. 31-5, PageID.427**. After Defendant Mischloney sees the inmate, she reports her assessment to Defendant Pioszak, a nurse practitioner, who provides a diagnosis and treatment plan. *Id.*

On the intake screening Mr. Smolinski completed on May 13, 2020, he indicated a history of infectious diseases and a right foot injury that had become

infected. He also added that he had a sore on his right foot that was draining fluids. **ECF No. 31-7, PageID.485-6**.

Years prior to that, Mr. Smolinski underwent a right ankle surgery. **ECF No. 31-2, PageID.324**. He had a recurring wound related to that surgery that would often swell and drain. ***Id.* at 326**.

While incarcerated, he began experiencing severe pain and drainage of his ankle wound due to a previous recurring post-surgical wound on his right ankle. Defendant Mischloney was aware of his ankle pain and history of infectious disease in his ankle wound because she reviewed the intake screening. **ECF No. 31-5, PageID.425**. On May 20, 2020, Defendant Mischloney became aware of his previous right ankle surgery and the fact that he was in constant pain during a medical assessment of Mr. Smolinski. **ECF No. 31-7, PageID.497; ECF No. 31-5, PageID.426**.

On May 26, 2020, Mr. Smolinski submitted a medical request complaining of pain and needing Tylenol or ibuprofen. **ECF No. 31-7, PageID.503**. The kite did not specifically indicate where he was in pain. He was seen that day by Defendant Mischloney. The record from that date indicates that Defendant Mischloney recorded something about his right ankle, but Defendant Mischloney cannot recall if it was related to *pain* in his right ankle. ***Id.* at PageID.497**, **ECF No. 31-5, PageID.427.**

On June 16, 2020, Mr. Smolinski notified the jail nurse through a medical request that he needed to be seen "ASAP" for his ankle wound, medication for his pain, and more bandages for his "hole." **ECF No. 31-7, PageID.525**.

On June 17, 2020, Mr. Smolinski was seen by Defendant Mischloney, who noted that he complained of pain in his right ankle and calf, and that the wound would swell and split open. Defendant Mischloney's assessment, per Defendant Pioszak, was a right ankle lateral ulcer. She also noted that it leaks with "yellow-ish purulent discharge," which was something she personally observed. The wound measured <u>1.4 cm x .7 cm</u>. **ECF No. 31-5, PageID.427**; **ECF No. 31-7, PageID.524**. Defendant Dorothy Pioszak signed off on the medical record on June 30, 2020, indicating that she reviewed the record. Defendant Mischloney advised Mr. Smolinski to use diclofenac gel once per day, in addition to A & D ointment, neither of which have an anti-bacterial component. She also advised him to eat a high protein diet for two weeks and alternate between ibuprofen and Tylenol. **ECF No. 31-7, PageID.524.** Defendant Pioszak agreed that none of these are used to treat an infection and acknowledged that yellow discharge *could* be a sign of infection. **ECF No. 31-6, PageID.460-461.** At this point, Defendant Pioszak had never personally observed Mr. Smolinski or his ankle, but nonetheless was "not convinced" Mr. Smolinski had an infection. ***Id.;*** **ECF No. 31-6, PageID.459**.

Mr. Smolinski was finally seen on June 20, 2020 by Defendant Pioszak. **ECF No. 31-7, PageID.528**. Defendant noted a right ankle edema with white discharge, wound. **ECF No. 31-6, PageID.461**. Defendant Pioszak further noted that the wound was draining and that he should return to the wound clinic. *Id.* The record indicates an upcoming appointment off-site at the wound clinic on June 25, 2020. **ECF No. 31-7, PageID.528.**

On June 21, 2020, Mr. Smolinski advised Defendant Mischloney via a kite that his open wound had gotten worse, that it was bigger, the wound burned, and his foot was swollen, bruised, and numb. He further indicated that he was getting headaches and that he felt sleepy. Mr. Smolinski also added that he thought something was "really wrong" and he was scared. **ECF No. 31-7, PageID.531**.

On June 22, 2020, Mr. Smolinski was seen by Defendant Mischloney, who noted that Mr. Smolinski stated a clear fluid was leaking from the wound. He also complained of tingling and numbness. The wound was 2 cm x 1 cm, larger than the last time it was measured 5 days prior. Defendant Mischloney's assessment was that per Defendant Pioszak, the wound needed to be cleaned by the wound clinic. **ECF No. 31-7, PageID.530**. At that time, Mr. Smolinski was only able to clean his wound using soap and water from the shower. **ECF No. 31-5, PageID.429**. The record also indicates that Scott Gagnon at Alpena County took photos of the wound and emailed them to himself on June 23, 2020. **ECF No. 31-7, PageID.532-535**.

On June 24, 2020, Mr. Smolinski was seen again by Defendant Mischloney. The wound at that point measured 2.5 cm x 1 cm, slightly longer than it was two days prior. **ECF No. 31-7, PageID.536**.

An appointment was made for Mr. Smolinski to be seen at the Wound Clinic on June 25, 2020. On June 25, 2020, Mr. Smolinski was seen at the Wound Clinic at MidMichigan Health through the University of Michigan. He explained to Dr. Straley at the Wound Clinic that his wound opened one to two weeks prior and he experiences pain at the site. He also reported that he has a history of infection at the site. Mr. Smolinski had edema and was advised that he needed to change the dressing every three days with foam. **ECF No. 31-7, PageID.542**. The wound at that point measured 2.5 cm x 1 cm x .2 cm depth. ***Id.* at PageID.544**. Defendant Pioszak signed the record, indicated that she reviewed them. ***Id.* at PageID.541**.

Defendant Pioszak did not recall if he was given his bandages to keep with him in his cell or if he was given the supplies when needed. **ECF No. 31-6, PageID.464**. Defendant Mischloney testified that someone would need to send a kite for bandages, as they were kept on the med cart. **ECF No. 31-5, PageID.431**. Mr. Smolinski testified that there were times that sufficient medical supplies was not available to him, such as proper wrap and bandages. **ECF No. 31-2, PageID.331**.

Mr. Smolinski was seen for follow-up at the Wound Clinic on July 2, 2020. Mr. Smolinski also reported pain at the site. He was again instructed that he needed to clean and change the dressing every three days. **ECF No. 31-7, PageID.557**.

On July 8, 2020, Mr. Smolinski was seen by Defendant Mischloney after a kite where he indicated he needed to "see medical ASAP" for his ankle. **ECF No. 31-7, PageID.563**. He complained of pain in his right leg. It was noted that his right calf and foot were swollen. The record indicates that Defendant Mischloney said he was being "noncompliant with the dressing change," however, she was not able to testify as to whether she observed that personally, if someone else told her, or remember any details regarding that note. **ECF No. 31-7, PageID.562**; **ECF No. 31-5, PageID.430-431**. Mr. Smolinski testified that he was compliant with his care and changing the dressings to the extent he could be, but was not allowed those items in his cell. **ECF No. 31-2, PageID.335**.

On July 9, 2020, he was seen again for follow-up at the Wound Clinic. At that time, he had <u>periwound maceration</u> on arrival. He only had a band-aid on because appropriate dressings were not available to him while in Alpena County Jail. He also complained that the pain was significantly worse and radiated up his leg. It was additionally noted by the Wound Clinic that there was muscle, fat layer and fascia exposed, with serosanguineous drainage noted. **ECF No. 31-7, PageID.567**.

Defendant Pioszak testified that her understanding of periwound maceration was that there was fluid or wetness around the wound. **ECF No. 31-6, PageID.464**.

On July 12, 2020, Mr. Smolinski submitted another kite complaining that it hurt to walk and stand and was concerned that something was majorly wrong. **ECF No. 31-7, PageID.591**. He was seen by Defendant Pioszak on July 13, 2020, who noted his pain and prescribed Tylenol. **ECF No. 31-7, PageID.590**.

On July 16, 2020, Mr. Smolinski presented for follow-up at the wound clinic. He was told to change his dressing every other day, which was more frequent that what he was previously advised. An outside orthopedic referral was also recommended. Mr. Smolinski continued to complain of pain. **ECF No. 31-7, PageID.599**.

On August 2, 2020, Mr. Smolinski submitted a kite indicating that he ran out of Tylenol and was in extreme pain. **ECF No. 31-7, PageID.625**. On August 3, 2020, Mr. Smolinski continued to complain about pain to Defendant Mischloney. **ECF No. 31-7, PageID.624**. On August 11, 2020, Mr. Smolinski was concerned that his ankle was infected. ***Id.* at PageID.634**.

In August of 2020, Mr. Smolinski was referred to a specialist through the University of Michigan for continued care. **ECF No. 31-7, PageID.635**. He was released from Alpena County Jail on August 19, 2020, according to his discharge medication form. **ECF No. 31-7, PageID.641**. On August 27, 2020, Mr. Smolinski

was again seen at the Wound Clinic. At that time, the record indicates, "Patient continues to follow with orthopedic surgery at U of M. He is scheduled for MRI on September 2, 2020 and is anticipated to stay down through surgery on the ankle. They have a high suspicion of <u>osteomyelitis</u>." **Exhibit 1 – MidMichigan Health Records**. Since being released, Mr. Smolinski underwent additional treatment with Dr. Talusan through the University of Michigan, including surgery in November of 2020 for <u>chronic osteomyelitis</u> and ultimately underwent an amputation on June 23, 2022. **ECF No. 31-2, PageID.337**; **ECF No. 31-11, PageID.662**.

While Defendants frame Mr. Smolinski's attempt to obtain adequate treatment as a scheme to get out of jail, he unequivocally denies that. **ECF No. 31-2, PageID.335**. He unequivocally denies disrupting the healing process of his wound. ***Id.* at PageID.332**. He denies using a toilet brush to his wound at any time. ***Id.* at PageID.334-335**. He also denies ever putting bleach on his wound to make it worse or cause an infection. ***Id.* at PageID.356**.

There are several genuine issues of material fact these issues should be resolved in favor of Plaintiff, as at the very least, Plaintiff is entitled to try his case before a jury.

## <u>STANDARD OF REVIEW</u>

Under Fed. R. Civ. P. 56, summary judgment may be granted only where there are no genuine issues of material fact and the moving party is entitled to judgment

as a matter of law. *Celotex Corp. v Catrett*, 477 U.S. 317, 322-323 (1986); *Adams v Metiva*, 31 F.3d 375, 378 (CA6 1994). Whenever the non-moving party presents evidence refuting a moving party's motion for summary judgment, the court must accept that evidence as true. *Adams*, 312 F.3d at 382. While the court may inquire into the plausibility of inferences from circumstantial evidence, it may not inquire into credibility of direct evidence for purposes of review. *Id.* The court must consider all Rule 56 materials on file, and draw all justifiable inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Sec. Exch. Comm'n v Blavin* , 760 F.2d 706, 710 (CA6 1985)(*per curiam*). The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby* , 477 U.S. 242 (1986). "A material issue of fact exists where a reasonable jury, viewing the evidence in the light most favorable to the non-moving party, could return a verdict for that party." *Vollrath v Georgia-Pacific Corp.*, 899 F.2d 533, 535 (CA6 1990).

## LAW AND ANALYSIS

### I. DEFENDANTS MISCHLONEY AND PIOSZAK'S ACTIONS CONSTITUTE DELIBERATE INDIFFERENCE.

The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes. U.S. Const. amend. VIII. Defendants also agree that the Eighth Amendment standard applies here.

The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 97, 103-04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104-05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

The Eighth Amendment's prohibition against cruel and unusual punishment applies not only to punishment imposed by the state, but also to deprivations which occur during imprisonment and are not part of the sentence imposed. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Estelle v. Gamble*, 429 U.S. 97, 101-02 (1976). Accordingly, the Eighth Amendment protects against the unnecessary and wanton infliction of pain, the existence of which is evidenced by the "deliberate indifference" to an inmate's "serious medical needs." *Estelle*, 429 U.S. at 104-06; *Napier v. Madison County, Kentucky*, 238 F.3d 739, 742 (6th Cir. 2001).

Under the Eighth Amendment, to sustain such a cause of action under 42 U.S.C. § 1983 for failure to adequately respond to an inmate's serious medical needs, a plaintiff must satisfy two tests—one objective and one subjective. *See Farmer v. Brennan,* 511 U.S. 825, 834 (1994); *Comstock,* 273 F.3d 693, 702 (6th Cir. 2001). The objective test requires the plaintiff to "allege that the medical need at issue is

'sufficiently serious.'" *Comstock,* 273 F.3d at 702 (quoting *Farmer,* 511 U.S. at 834).

Under the subjective test, a plaintiff must demonstrate that defendant(s) acted with a sufficiently culpable state of mind—one of "'deliberate indifference' to inmate health or safety." *Estate of Novack v. County of Wood,* 226 F.3d 525, 529 (7th Cir. 2000) (quotations & citation omitted); *see also Richmond v. Huq,* 872 F.3d 355, 364 (6th Cir. 2017). Deliberate indifference is established by showing that the defendant subjectively perceived facts from which to infer substantial risk to the detainee, that the defendant drew the inference, and that he or she then disregarded that risk.14 *Comstock,* 273 F.3d at 703 (citing *Farmer,* at 837). Evidence that an officer failed to act in the face of an obvious risk of which the officer truly did not know, even if he should have, is not sufficient to establish deliberate indifference. *Watkins*, 273 F.3d at 686. However, as always, a plaintiff can prove knowledge through circumstantial evidence, and the trier of fact may infer actual knowledge from circumstantial evidence. *Farmer*, 511 U.S. at 843. For example, the more obvious the risk, the stronger the circumstantial evidence that the official(s) actually knew of the risk. *Id.* Furthermore, a defendant will not evade liability simply because he or she "'merely refused to verify underlying facts that he [or she] strongly suspected to be true, or declined to confirm inferences of risk that he [or she] strongly suspected to exist.'" *Comstock, supra* at 703. To satisfy the objective component, an

inmate's "sufficiently serious" medical need must be a condition "diagnosed by a physician as mandating treatment," or "so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Blackmore v. Kalamazoo Cty.*, 390 F.3d 890, 897 (6th Cir. 2004).

Plaintiff received several diagnoses, both by nurse practitioner Defendant Pioszak and from the U of M Wound Clinic, which required treatment, thus qualifying his condition as a serious medical need. It was noted by Plaintiff, as well as Defendant Mischloney who observed Plaintiff that he had fluid draining from his wound. Further, his wound was objectively measured and it appeared to be getting larger. Defendant Pioszak refers to his wound as a "right ankle ulcer" on several occasions. When Plaintiff is seen at the Wound Clinic, he is diagnosed with periwound maceration and later, osteomyelitis was at least suspected, and later confirmed after he was released and seen by another specialist. Plaintiff continued to complain of pain in his ankle. He was treated with Tylenol, A & D ointment, and told to change his wound dressings every three days, then every other day. Plaintiff satisfies the objective component.

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind in denying medical care." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000) (citing *Farmer*, 511 U.S. at 834). Deliberate indifference "entails something more than mere negligence," *Farmer*,

511 U.S. at 835, but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* Under *Farmer*, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. Intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed meets the standard for deliberate indifference under the Eighth Amendment. *Estelle v Gamble*, 429 US 97, 104-05; 97 S Ct 285; 50 L Ed 2d 251, 260 (1976).

Defendant Mischloney recognized the importance of being compliant with changing wound dressings and noted that you "can't undo healthy tissue and expect it to get better." **ECF No. 31-5, PageID.432**. She agreed that yellowish discharge is a cause for concern. ***Id.* at PageID.429**. Despite this, Plaintiff testified that he did not always have access to the bandages he needed, consistent to what he reported to the Wound Clinic. Despite not seeing him personally for several visits, Defendant Pioszak was "not convinced" Mr. Smolinski had an infection, despite his increasing concerns and reports of his history. There is a question of fact with regard to whether Defendants provided Plaintiff with appropriate dressings to care for his wound, which is a central fact to Plaintiff's deliberate indifference claim. ECF No. 19, PageID.133. Defendants were aware of the importance of changing Plaintiff's

dressings and were aware that he was instructed specifically to do so by the Wound Clinic.

Denial of appropriate dressings for a wound can interrupt a prescribed treatment plan, thus satisfying the subjective prong of the Eight Amendment deliberate indifference claim. *Boretti v. Wiscomb*, 930 F.2d 1150 (6th Cir. 1991).

## II. DEFENDANT ADVANCED HEALTHCARE WAS ON NOTICE THAT ABSENT ADDITIONAL TRAINING, ONE OF ITS NURSES WOULD FAIL TO ADMINISTER ADEQUATE MEDICAL CARE SO AS TO AMOUNT TO A CONSCIOUS DISREGARD FOR PLAINTIFF'S RIGHTS.

A municipality or other local governmental entity is considered a "person" under § 1983 and may therefore be held liable for its actions depriving an individual of his federal rights. *Board of Cty. Comm'rs of Bryan Cty, Okl. v. Brown*, 520 U.S. 397, 403 (1997) (citing *Monell v. N.Y.C. Dep't of Social Servs.*, 436 U.S. 658, 694 (1978)). Since *Monell*, the Sixth Circuit has held that private entities, like ACH, may also be treated as "persons" and subject to § 1983 liability when the entity performs traditional state functions like providing medical care to inmates or arrestees. *Winkler*, 893 F.3d at 904 ("A private entity . . . that contracts to provide medical services at a jail can be held liable under § 1983 because it is carrying out a traditional state function"); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 817–18 (6th Cir. 1996) (treating a private prison corporation as a "person" for the purpose of. § 1983).

To establish municipal liability under § 1983, a plaintiff must establish that a constitutional violation caused his or her harm, and that the municipality was responsible for the violation. *Spears v. Ruth*, 589 F.3d 249, 256 (6th Cir. 2009). Municipal liability for such harms exists only if the implementation of official policies or established customs caused the harm. *Id.* (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 708 (Powell, J., concurring)).

This Court previously held that Plaintiff stated a plausible *Monell* claim under a failure to train theory. To succeed on a failure to train or supervise claim, Plaintiff must prove that (1) the training or supervision was inadequate for the tasks performed; (2) the inadequacy was the result of Defendant ACH's deliberate indifference; and (3) the inadequacy was closely related to or directly caused the injury. *See Ellis ex rel. Pendergrass v. Cleveland Mun. School Dist.*, 455 F.3d 690, 700–01 (6th Cir. 2006) (citing *Russo v. City of Cincinnati*, 953 F.2d 1036, 1046 (6th Cir. 1992)).

Plaintiff's failure to train theory is based on the fact that employees of ACH did not adequately train its employees on how to monitor inmates' medical needs and provide proper treatment. A plaintiff can demonstrate deliberate indifference under *Monell* by showing a defendant's "failure to equip [its employees] with specific tools to handle recurring situations." *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 409, 117 S. Ct. 1382, 1391, 137 L. Ed. 2d 626 (1997). A

Plaintiff can show deliberate indifference if "the need for more or different training is so obvious and the inadequacy [is] so likely to result in the violation of constitutional rights." *City of Canton v. Harris*, 489 U.S. 378, 390, 109 S. Ct. 1197, 103 L. Ed. 2d 412 (1989)).

"Plaintiff can show deliberate indifference based on 'single-incident liability' if the risk of the constitutional violation was so obvious or foreseeable that Defendant ACH was deliberately indifferent for failing to prepare its employees for it." *Victor v. Reynolds,* 582 F. Supp. 3d 516, 522 (E.D. Mich. 2022) (citing *Connick*, 563 U.S. at 63).

Plaintiff testified that, although Defendants referred him to outside specialists at the Wound Clinic, the necessary dressings prescribed by the Wound Clinic to treat his worsening wound were not available at Alpena County Jail or were not always provided to him. The training Defendants received by ACH was largely training related to how something is done in a correctional setting versus someone who is not. Otherwise, Defendants relied largely on their experience and knowledge from working in the field or their nursing education. **ECF No. 31-6, PageID.467**; **ECF No. 31-5, PageID.433**. The Defendants were trained to, and did, make referrals to the outside Wound Clinic but not equipped with the "specific tools" to ensure that the treatment plan prescribed by the Clinic was followed, specifically with regard to dressing Mr. Smolinski's wound. As noted above, Defendants noted the changing

characteristics of Plaintiffs wound – it grew from 1.4 cm long at one point to 2.5 cm long. The also noted the fluid discharge, which was yellowish, white and clear at different points. During this time, Plaintiff consistently complained of pain, that he did not complain of when he initially presented to the jail.

## CONCLUSION AND RELIEF REQUESTED

WHEREFORE, for the foregoing reasons, Plaintiff respectfully requests that the Honorable Court Deny Defendants' Motion for Summary Judgment.

Respectfully Submitted,

*/s/ Hannah R. Fielstra*
Hannah R. Fielstra (P82101)
Attorney for Plaintiff

Dated: February 18, 2025

## LOCAL RULE CERTIFICATION

I, Hannah R. Fielstra, certify that this document complies with Local Rule 5.1(a), including: double-spaced (except for quoted materials and footnotes); at least one-inch margins on the top, sides, and bottom; consecutive page numbering; and type size of all text and footnotes that is no smaller than 10-1/2 characters per inch (for non-proportional fonts) or 14 point (for proportional fonts). I also certify that it is the appropriate length. Local Rule 7.1(d)(3).

*/s/ Hannah R. Fielstra*
Hannah R. Fielstra

**CERTIFICATE OF SERVICE**

I hereby certify that on February 18, 2025, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to all parties of record.

*/s/ Hannah R. Fielstra*
Hannah R. Fielstra